[Cite as *State ex rel. Williams v. Indus. Comm.*, 2014-Ohio-1490.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Carolyn Williams, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No.  13AP-407 |
| | : | |
| The Industrial Commission of Ohio and St. Vincent Charity, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on April 8, 2014

*Shapiro, Marnecheck & Palnik,* and *Matthew A. Palnik*, for relator.

*Michael DeWine*, Attorney General, and *Sandra E. Pinkerton,* for respondent Industrial Commission of Ohio.

*Dinsmore & Shohl, LLP*, and *Michael L. Squillace*, for respondent St. Vincent Charity.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BROWN, J.

{¶ 1}  Relator, Carolyn Williams, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her application for temporary total disability ("TTD") compensation and to enter an order granting the compensation.

{¶ 2}   Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate, who issued the appended decision, including findings of fact and conclusions of law, recommending that the requested writ be denied.  The magistrate found that the commission did not abuse its discretion in its determining that any loss of earnings was not due to relator's allowed condition, but was instead due to her decision not to return to the workforce.

{¶ 3}   Relator has filed objections to the magistrate's decision, in which she challenges the magistrate's finding that she voluntarily abandoned the workforce, asserting that her separation from employment was injury induced.  Relator also argues that the magistrate's factual findings fail to acknowledge that her treating doctors never released her to return to work.

{¶ 4}   In the findings of fact, the magistrate noted that relator was unable to return to her former position of employment in 2001 and that she received TTD compensation from July 17, 2001 through June 22, 2004, at which time such compensation was terminated because her allowed conditions reached maximum medical improvement.  As further noted by the magistrate, relator did not make any attempt to return to work and, in March 2005, she filed an application for permanent total disability ("PTD") compensation. The commission denied relator's application for PTD compensation finding that her allowed physical conditions permitted her to perform sedentary work, and that her allowed psychological condition was not work prohibitive. After her application for PTD compensation was denied, relator did not seek employment; rather, five years later she underwent back surgery and applied for a new period of TTD compensation.

{¶ 5}   Relator's arguments that her physician did not release her to her former position and that her separation from employment was injury induced are not dispositive. As noted by the magistrate, the evidence before the commission indicated that, although she could not return to her former position of employment, (1) relator was physically capable of performing sedentary work, (2) the allowed psychological condition was not work prohibitive, and (3) there was no evidence relator had sought to return to the workforce or seek work within her physical restrictions.  Accordingly, the commission did not abuse its discretion in finding that any loss of earnings was not due to relator's

allowed conditions and that she voluntarily abandoned the workforce.  *See, e.g., State ex rel. Roxbury v. Indus. Comm.,* 138 Ohio St.3d 91, 2014-Ohio-84 (where claimant's TTD compensation terminated because allowed physical condition reached maximum medical improvement and subsequent request for PTD compensation was denied, commission did not abuse its discretion in denying request for reinstatement of TTD compensation where evidence indicated relator remained physically capable of sedentary work, the allowed psychological condition was not disabling, and relator failed to seek other work). Relator's objections are therefore overruled.

{¶ 6}  Based upon this court's independent review, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law.  In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Objections overruled; writ denied.*

DORRIAN and O'GRADY, JJ., concur.

_____

[Cite as *State ex rel. Williams v. Indus. Comm.*, 2014-Ohio-1490.]

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel.　　　　　　　　　:
Carolyn Williams,

　　　　　　　　　　　　　　　　　　:

　　　　　Relator,

　　　　　　　　　　　　　　　　　　:

v.　　　　　　　　　　　　　　　　　　　　　　　No.  13AP-407

　　　　　　　　　　　　　　　　　　:

The Industrial Commission　　　　　　　　　　(REGULAR CALENDAR)
of Ohio and St. Vincent　　　　　　　　:
Charity,

　　　　　　　　　　　　　　　　　　:

　　　　　Respondents.

　　　　　　　　　　　　　　　　　　:

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on October 10, 2013

---

*Shapiro, Marnecheck & Palnik,* and *Mathew Palnik*, for relator.

*Michael DeWine*, Attorney General, and *Sandra E. Pinkerton,* for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

{¶ 7}  Relator, Carolyn Williams, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for temporary total

disability ("TTD") compensation and ordering the commission to find that she is entitled to that compensation.

Findings of Fact:

{¶ 8} 1. Relator sustained a work-related injury on December 24, 1997 and her workers' compensation claim has been allowed for the following conditions:

> Aggravation of pre-existing foraminal encroachment severe right side of L5-S1, moderate towards left side of L4-5 & L5-S1 and mild to moderate towards right side of L4-5; L5/S1 disc herniation; depressive disorder.

{¶ 9} 2. On October 10, 2001, relator filed a C-84 motion asking for the payment of TTD compensation.

{¶ 10} 3. Following a hearing, relator was awarded TTD compensation beginning July 17, 2001 and continuing.

{¶ 11} 4. Relator continued to receive TTD compensation until June 22, 2004 when, following a hearing before a district hearing officer ("DHO"), her allowed conditions were found to have reached maximum medical improvement ("MMI").

{¶ 12} 5. The DHO's order terminating her TTD compensation was affirmed following a hearing held on August 3, 2004 before a staff hearing officer ("SHO").

{¶ 13} 6. Further appeal was refused by order of the commission mailed September 8, 2004.

{¶ 14} 7. On March 22, 2005, relator filed an application for permanent total disability ("PTD") compensation.

{¶ 15} 8. Following a January 25, 2007 hearing before an SHO, relator's request for PTD compensation was denied. The SHO relied on medical evidence to find that relator was capable of performing at a sedentary work level and that her allowed psychological condition was not work prohibitive. Thereafter, the SHO discussed the non-medical disability factors and found that she was capable of performing some sedentary employment:

> The claimant is presently 52 years old. She has three years of college at the University of Akron in nursing. She also has training as a cosmetologist and has also worked as a home

health aide. She was working as a nurse assistant in a hospital from September, 1994 until July, 2001.

She had two MRI diagnostic tests, the first performed in 1999 and a repeat in December, 2001. At one point surgery was recommended and she was found maximum medically improved based on Dr. Ghanma's 08/29/2003 exam unless she had surgery for the disc. However, no surgery has been performed and there is medical in the file that indicates that she is not a surgical candidate.

The rehabilitation records indicate physical therapy and psychotherapy treatments as well as exercise on a nautilus type machine. There is presently no rehabilitation services being performed nor are they being asked for.

There is a report by Thomas Nimburger dated 09/12/2005 and an addendum by Deanna Arbucle dated 12/12/2005. Both are vocational consultants. After evaluating the claimant's age, education and past work experience, they indicated that there are several jobs within the economy that claimant is capable of accessing. Some of these jobs include telephone operator, telephone answering service operator, appointment clerk, and surveillance system monitor. These are all semi-skilled or unskilled jobs at the sedentary level. Also submitted to the file were vacancies by local employers for these types of positions.

The adjudicator finds that the claimant's educational level is an asset to employment. Three years of college is sufficient for many entry level positions. Her age of 52 is considered to be a neutral factor. She is not too old for further training if she becomes interested. Her past work experience has been quite varied including nursing assistant from 1992 through 2001 and a home health aide from 1982 to 1990 and a hospital aide at a state hospital from 1978 to 1987 and further training in auto mechanics, cosmetology and with adult vocational services in 1992.

The adjudicator finds that the allowed medical conditions preclude the injured worker from her past work activities. However, she is still capable of working in a sedentary capacity. The only vocational evidence in the file indicates that there are jobs within the local economy that are within the injured worker's residual functional capacity. Therefore,

> her disability is partial not total. The injured worker remains capable of sustained remunerative employment. Therefore, this application is denied.

{¶ 16} As such, although the SHO agreed that relator could not return to her former position of employment, the SHO concluded that she was not precluded from all employment.

{¶ 17} 9. Relator did not return to work after her application for PTD compensation was denied nor did she seek other employment.

{¶ 18} 10. Approximately five years later, on August 30, 2012, relator underwent back surgery. Relator had sought and received authorization to have this surgery.

{¶ 19} 11. On September 5, 2012, relator filed a motion asking that she be paid TTD compensation beginning the date of her surgery and continuing.

{¶ 20} 12. The matter was heard before a DHO on November 29, 2012. The DHO denied the request for TTD compensation finding that relator did not seek any employment after her application for PTD compensation was denied and finding that she had evidenced an intent to voluntarily abandoned the workforce. As such, the DHO found that her lack of wages was not due to the allowed conditions in her claim but was due to her decision not to return to work. Specifically, the DHO's order states:

> The District Hearing Officer finds the Injured Worker voluntarily abandoned the workforce when she volitionally chose to not seek employment in spite of the fact that medical previously relied upon by the Industrial Commission supported that she was capable of physical work activity at the sedentary work capacity and that her psychological allowance in this claim was not work-prohibitive.
>
> The District Hearing Officer does not find the issue as to reinstatement is contingent on the standard for payment of temporary total disability compensation versus permanent and total disability compensation, but rather why the Injured Worker has failed to re-enter the work force subsequent to medical evidence supporting that she was capable of doing the same.
>
> Counsel for the Employer argued that the Injured Worker last worked in July 2001 and was subsequently denied

permanent and total disability compensation by the Industrial Commission on 01/25/2007.

Additionally, the Injured Worker was found to have reached maximum medical improvement on the allowed conditions in this claim effective 06/22/2004.

The Injured Worker testified that subsequent to her last date worked in July, 2001, she has never returned to the workforce, nor has ever applied for any potential job with any employer. The Injured Worker testified that she did not seek employment because she was physically unable to work.

Counsel for the Employer argued that the evidence supported that the Injured Worker was capable of sedentary employment with respect to her physical conditions and that the psychological condition was not work-prohibitive in any capacity.

Counsel for the Employer argued that the Injured Worker's departure from the entire workforce was not motivated by her industrial injury, but rather a lifestyle choice given the fact that the evidence supported she was capable of sedentary employment. While the District Hearing Officer concurs with the Injured Worker's counsel that there was no finding of voluntary abandonment in regard to this claim prior to today's hearing, the District Hearing Officer finds that the Injured Worker has made no attempt whatsoever to re-enter the workforce in over 11 years, despite the fact that the evidence does not support the Injured Worker's allegation that she is unable to work as a result of her industrial injuries.

The District Hearing Officer finds the fact that the Injured Worker has never applied for a single job in over 11 years demonstrates her intent to abandon the entire labor market. The District Hearing Officer is not persuaded that a nexus exists between the Injured Worker's departure from the workforce and her allowed conditions in this claim.

The District Hearing Officer does not find that the Injured Worker's lack of earnings at the time of her surgery/requested period of disability are the result of her psychological condition, nor was she precluded from

returning to work in a sedentary capacity based on the allowed conditions in this claim.

{¶ 21} 13. Relator appealed and the matter was heard before an SHO on January 10, 2013. The SHO vacated the prior DHO order and found that relator's surgery constituted new and changed circumstances justifying the reinstitution of a period of TTD compensation. The SHO also noted that there had never been a finding that relator voluntarily left the workforce for reasons unrelated to the allowed conditions in her claim and there had never been a finding that she had been able to return to her former position of employment. The SHO concluded:

> No evidence of an "abandonment of employment" was presented at today's (01/10/2012 [sic]) hearing, other than a suggestion that the simple passage of time since the date last worked (July 2001) permits an inference that an abandonment of employment has occurred. The Staff Hearing Officer finds no legal authority for such a proposition.

{¶ 22} 14. Relator's employer, St. Vincent Charity, appealed and the matter was heard before the commission on March 12, 2013. The commission vacated the prior SHO order and denied relator's request for TTD compensation finding that there was no evidence of a medical inability to perform other work in the years since she last worked and since her application for PTD compensation had been denied and, as such, she had no lost wages to replace. Specifically, the commission stated:

> The Injured Worker previously received temporary total disability compensation until it was determined, by Staff Hearing Officer order issued 09/08/2004, that the allowed conditions were at maximum medical improvement. Thereafter, the Injured Worker sought permanent total disability compensation. In an order issued 01/27/2007, a Staff Hearing Officer determined the Injured Worker was capable of sustained remunerative employment at the sedentary level. Despite these findings, the Injured Worker did not return to the workforce or seek work within her physical restrictions.
>
> On 08/30/2012, the Injured Worker underwent an authorized surgery consisting of a laminectomy and fusion.

The Injured Worker requests temporary total disability compensation beginning 08/30/2012 and continuing.

Temporary total disability compensation is confined to situations in which a *working* Injured Worker is prevented from doing his or her job by an industrial injury. State ex rel. Eckerly v. Indus. Comm., 105 Ohio St.3d, 2005-Ohio-2587, 828 N.E.2d 97. The purpose of temporary total disability compensation is to compensate for loss of earnings. State ex rel. Glenn v. Indus. Comm., 122 Ohio St.3d 483, 2009-Ohio-3627, 912 N.E.2d 592, ¶ 7. There can be no lost earnings or even a potential for lost earnings, if the Injured Worker is no longer part of the active work force. State ex rel. Pierron v. Indus. Comm., 120 Ohio St.3d 40, 2008-Ohio-5245, 896 N.E.2d 140, ¶ 9.

In accordance with State ex rel. Lackey v. Indus. Comm., 129 Ohio S.3d 119, 2011-Ohio-3089, 950 N.E.2d 542, the Commission acknowledges the Injured Worker's initial separation from employment was injury induced. However, the Injured Worker's lack of effort to seek alternative employment supports the conclusion that she has foreclosed the possibility of employment and has, therefore, abandoned the entire workforce. As noted in State ex rel. Corman v. Allied Holdings, Inc., 132 Ohio St.3d 202, 2012-Ohio-2579, 970 N.E.2d 929:

As in Pierron, there was no evidence of a medical inability to perform other work in the years between Corman's departure from Allied Holdings and his request for TTC, so Corman had the same choice as Pierron-seek other employment or work no further. When Corman elected the latter, he eliminated the possibility of, or potential for, lost wages. He cannot, therefore, credibly assert that he has lost income due to his industrial injury.

The Commission likewise finds the Injured Worker is not eligible for temporary total disability compensation, and it is denied from 08/20/2012 to 03/12/2013.

(Emphasis sic.)

{¶ 23} 15. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 24} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 25} In the present case, the medical evidence is clear: relator is not able to return to her former position of employment and has not been able to do so since July 2001. Because she was unable to return to her former position of employment, relator received TTD compensation from July 17, 2001 through June 22, 2004, when her TTD compensation was terminated based upon a finding that her allowed conditions had reached MMI.

{¶ 26} After her TTD compensation was terminated, relator did not make any attempts to return to work. Instead, approximately one year later, in March 2005, she filed an application for PTD compensation. In January 2007, the commission denied relator's application for PTD compensation finding that her allowed physical conditions permitted her to perform sedentary work and her allowed psychological condition was not work prohibitive. In analyzing the non-medical disability factors, the commission noted that relator was 52 years of age, had studied nursing in college for 3 years, had training as a cosmetologist and as a home health aide. The commission determined that her age was a neutral factor and that her education and work experience were assets to her ability to become re-employed. The SHO noted that there was vocational evidence indicating that there were jobs within the local economy within her residual functional capacity.

{¶ 27} After her application for PTD compensation was denied, relator did not seek employment. Instead, five years later, relator underwent back surgery and applied for a new period of TTD compensation.

{¶ 28} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 29} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 30} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 31} In denying her application for TTD compensation, the commission cited the Supreme Court of Ohio's decision in *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245, ¶ 9. In that case, the court stated:

> Temporary total disability compensation is intended to compensate an injured worker for the loss of earnings incurred while the industrial injury heals. *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 44, 517 N.E.2d 533. There can be no lost earnings, however, or even a potential for lost earnings, if the claimant is no longer part of the active work force. As *Ashcraft* observed, a claimant who leaves the labor market "no longer incurs a loss of earnings because he is no longer in a position to return to

work." When the reason for this absence from the work force is unrelated to the industrial injury, temporary total disability compensation is foreclosed. *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678. As we stated in *State ex rel. Baker v. Indus. Comm.* (2000), 89 Ohio St.3d 376, 380-381, 732 N.E.2d 355, when a claimant "chooses for reasons unrelated to his industrial injury not to return to any work when able to do so, that employee has abandoned both his employment and his eligibility for [temporary total disability]."

{¶ 32} Richard Pierron sustained a work-related injury and his doctor imposed medical restrictions which were incompatible with his former position of employment. Pierron accepted a light-duty warehouse job consistent with those restrictions and continued to work in that position for 23 years.

{¶ 33} When his light-duty job was eliminated in 1997, Pierron was laid off. In the years that followed, he remained unemployed except for a brief part-time stint as a flower delivery person. In late 2003, Pierron moved for TTD compensation which the commission denied. *Id.* at ¶ 11.

{¶ 34} The court affirmed the commission's decision finding that, although Pierron "did not choose to leave his employer in 1997, * * * once that separation nevertheless occurred, Pierron had a choice: seek other employment or work no further."

{¶ 35} The commission also cited *State ex rel. Corman v. Allied Holdings, Inc.,* 132 Ohio St.3d 202, 2012-Ohio-2579. In that case, Ronald R. Corman sustained a work-related injury in 2002, retired one year later and never worked again. There was no evidence in the record that he was medically incapable of performing other work.

{¶ 36} In 2009, Corman requested TTD compensation which the commission denied. Ultimately, Corman's request for a writ of mandamus was denied.

{¶ 37} Corman argued that his case was distinguishable from *Pierron* because while he retired from his former position of employment because of his injury, Pierron had never made that argument. The court disagreed, stating:

There are important similarities between the case before us and *Pierron*. Both claimants sought TTC years after retiring

from their former positions of employment. In those intervening years, neither individual made a credible effort to secure other employment. Neither claimant produced evidence of a medical inability to perform other work during those years, prompting the commission to conclude in each case that the claimant had permanently left the work force. In upholding the commission's order in *Pierron,* we explained that

[w]hen a departure from the entire work force is not motivated by injury, we presume it to be a lifestyle choice, and as we stated in *State ex rel. Pepsi-Cola Bottling Co. v. Morse* (1995)*,* 72 Ohio St.3d 210, 216, 648 N.E.2d 827, workers' compensation benefits were never intended to subsidize lost or diminished earnings attributable to lifestyle decisions. In this case, the injured worker did not choose to leave his employer in 1997 [i.e., his job was eliminated], but once that separation nevertheless occurred, Pierron had a choice: seek other employment or work no further. Pierron chose the latter. He cannot therefore credibly allege that his lack of income from 2001 and beyond is due to industrial injury. Accordingly, he is ineligible for temporary total disability compensation.

[*Pierron*]*,* 120 Ohio St.3d 40, 2008-Ohio-5245, 896 N.E.2d 140, at ¶ 11.

Corman's attempt to distinguish *Pierron* is not persuasive. Corman contends that he retired from his former position of employment with Allied Holdings because of his injury—a claim that was not made in *Pierron.* The commission, however, did not find that Corman's departure from Allied Holdings was injury-induced, but even if it had, it would not advance his cause. As in *Pierron,* there was no evidence of a medical inability to perform other work in the years between Corman's departure from Allied Holdings and his request for TTC, so Corman had the same choice as Pierron—seek other employment or work no further. When Corman elected the latter, he eliminated the possibility of, or potential for, lost wages. He cannot, therefore, credibly assert that he has lost income due to his industrial injury.

The judgment of the court of appeals is affirmed.

*Id.* ¶ 6-8.

{¶ 38} In the present case, relator has not worked nor has she sought any employment since her application for PTD compensation was denied in 2007. Although it is undisputed that relator cannot return to her former position of employment, the commission determined that she was capable of other work. Relator never attempted to return to work but, instead, she sought a new period of TTD compensation after undergoing back surgery. The magistrate finds that the commission did not abuse its discretion when it determined that any loss of earnings was not due to her allowed conditions but was instead due to her decision not to return to the workforce.

{¶ 39} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion when it determined that she had voluntarily abandoned the workforce and, as such, had no lost wages to replace. The commission did not abuse its discretion when it denied relator's motion for TTD compensation and, as such, this court should deny relator's request for a writ of mandamus.


/S/ MAGISTRATE
STEPHANIE BISCA BROOKS


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).